UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MARY WILLIAMS, MICHAEL MANINT, SUSAN MANINT**          CIVIL ACTION

**VERSUS**                                                NO. 08-0104

**REPUBLIC FIRE AND CASUALTY INSURANCE CO.**     SEC. "B" (5)

ORDER AND REASONS

Before the Court is Plaintiffs' Motion for Partial Summary Judgment (Rec. Doc. No. 42).  After oral argument, review of the pleadings, and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment is **DENIED**.  **IT IS FURTHER ORDERED** that Plaintiffs' Motion to Certify Class (Rec. Doc. No. 20) and Plaintiffs' Motion to Appoint Putative Class Counsel (Rec. Doc. No. 45 & 103) are **DISMISSED AS MOOT.**

*BACKGROUND*

After the damage caused by Hurricane Katrina to Plaintiffs' property, Plaintiffs, Mary Williams, Michael Manint, and Susan Manint, timely filed insurance claims with Defendant Republic Fire and Casualty Insurance Company ("Republic").  Thereafter, Republic inspected the damaged properties and determined that covered losses had been incurred and determined the amount of the covered losses.  Plaintiffs allege that Defendant Republic then intentionally and inappropriately reduced the loss payments to

1

Named Plaintiffs and all putative class members by deducting a higher named storm deductible than permitted under the policy.[1]

On August 29, 2007, Plaintiffs individually and on behalf of those similarly situated individuals and/or entities, filed a Petition in the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana, seeking damages, declaratory relief and class certification. Thereafter, on or about November 20, 2007, Plaintiffs filed their first amended petition where Republic Fire and Casualty Insurance Company ("Republic") was named as the sole defendant. On January 4, 2008, removed this matter to federal court.

Republic determined Ms. Williams' final covered loss to be $17,911.22, but assessed a Named Storm Deductible of $7,320.00 instead of $895.56. Similarly, Republic determined the Manint's final covered loss to be $17,164.49, but assessed a Named Storm Deductible of $4,445.00 instead of $858.22.

Plaintiffs contend that Republic intentionally miscalculated the policies in question as the calculation of the deductible should be 5% of the Final Covered Loss as opposed to the 5% of the Total Dwelling Coverage Limit. Plaintiffs first assert that the insurance contracts at issue here are clear in favor of Plaintiffs' argument. However, Plaintiffs further assert that

---

[1] Plaintiffs filed a Motion to Certify Class (Rec. Doc. No. 20), but said motion is still pending and no class has been certified.

if the policy is susceptible to two or more interpretations, and each of the alternative interpretations is reasonable, then the ambiguity must be construed against the drafter.  Plaintiffs argue that the Policyholder Notice, which explains the deductible in a light favorable to Defendant, is inadmissible parol evidence.

Defendant Republic instituted the Named Storm Deductible ("NSD") in 2003.  The NSD endorsement was approved by the Louisiana Department of Insurance.  The NSD endorsement was approved by the Department of Insurance with the same language as contained in the policy issued to Named Plaintiffs and putative class representatives.  In 2003, Defendant attached the "Important Policyholder Notice, Louisiana Homeowners, Named Storm Deductible" ("Policyholder Notice") with renewal policies.  The Policyholder Notice provided an explanation of how the percentage for the NSD should be applied.

Defendant contends that said deductible contained within the policy does not state that the named storm deductible is a percentage of the total loss as claimed by Plaintiffs.  Defendant further argues that even if the insurance policy proves ambiguous, the ambiguous term should not be construed against the insurer because the policy is not susceptible to two or more reasonable interpretations.

## DISCUSSION

**A.   Summary Judgment Standard**

3

Summary judgment is proper if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532, 536 (5th Cir. 1998).  The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.  *Id.*  Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.  *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. Contract Interpretation Under Louisiana Law**

An insurance policy a contract between the parties and

should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. *See* La.Civ.Code art. 2045; *Cadwallader v. Allstate Ins. Co.,* 848 So.2d 577, 580 (La. 2003); *Louisiana Insurance Guar. Ass'n v. Interstate Fire & Casualty Co.*, 630 So.2d 759, 763-764 (La. 1994). The words and phrases used in an insurance policy are to be construed using their plain, ordinary, and generally prevailing meaning unless the words have acquired a technical meaning. *Cadwallader,* 848 So.2d at 580. Insurance contract interpretation should not enlarge or restrict provisos beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. *Id*. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. Civ. Code 2050; *Barousse v. Western World Ins. Co.*, 978 So.2d 1129 (La.App. 3 Cir. 2008).

Ambiguous policy provisions are generally construed against the insurer and in favor of coverage, and provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. La. Civ. Code art. 2056; *Carrier v. Reliance Ins. Co.,* 759 So.2d 37, 43 (La. 2000); *Louisiana Ins.*, 630 So.2d at 764; *Cadwallader,* 848 So.2d at 580. However, this strict construction principle applies only if the ambiguous policy provision is

susceptible to two or more reasonable interpretations. *Carrier*, 759 So.2d at 42. Louisiana Civil Code art. 2053 provides that a doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. *Landry v. Lonestar Corrosion Services, Inc.*, 2008 WL 241605 (La. App. 3 Cir. 1/30/08). If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *Succession of Fannaly v. Lafayette Ins. Co.*, 805 So.2d 1134, 1137 (La. 2002). Finally, the determination of whether a contract is clear or ambiguous is a question of law. *Louisiana Ins.*, 630 So.2d at 764; *Cadwallader,* 848 So.2d at 580.

The interpretation of insurance contracts in Louisiana must also comport with the requirements of La. R.S. 22:628, also known as the "Entire Policy Contract Statute." La. R.S. 22:628 provides:

> No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance. This Section shall not apply to contracts as provided in Part XV of this Chapter.
>
> The provisions of this Section shall apply where a policy or other written evidence of insurance is coupled by specific reference with another policy or written evidence of

6

> insurance in existence as of the effective date hereof or issued thereafter.
>
> Any written agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be deemed to be physically made a part of a policy or other written evidence of insurance, within the meaning of this section, whenever such written agreement makes reference to such policy or evidence of insurance and is sent to the holder of such policy or evidence of insurance by United States mail, postage prepaid, at such holder's last known address as shown on such policy or evidence of insurance or is personally delivered to such holder.

**C. Policyholder Notice and Renewal Policy**

Defendant explains that Republic instituted the Named Storm Deductible in 2003 and forwarded it to renewal policyholders, in conjunction with the renewal policy. Under "Deductible for Section I," the renewal policy declaration reads, "All Perils Deductible $1,000" on one line and beneath that line it reads, "Named Storm Deductible of 5% Applies (See Endorsement)." The Endorsement referred to in the renewal policy declaration states in pertinent part the following: "For a Premium Credit, we will pay only that part of the total of the loss for all Section I Property Coverages that exceeds the Named Storm deductible shown on the Declarations page." The meaning of the All Perils Deductible remains clear on the face of the document. However, the same does not hold true for the Named Storm Deductible.

The Policyholder Notice mailed in conjunction with the renewal policy in pertinent part reads:

> Your enclosed renewal policy has been issued with two deductibles. The named storm deductible applies to loss resulting from a tropical storm or hurricane. The "All Peril Deductible" applies to loss resulting from all other perils. Your enclosed renewal policy has been issued with a 5% Named Storm Deductible. ***For example, if your dwelling is insured for $100,000, your deductible for tropical storms and hurricanes would be $5,000. The deductible for damage to your home and personal property caused by other perils (such as fire and theft) will remain the same***. . ." **(Emphasis Added).**

This example contained within the Policyholder Notice supports Defendant's assertion of how the deductible ought to be applied.

### D. Policyholder Notice Admissibility

While the Policyholder Notice supports Defendant's assertion of how the deductible should be applied, Plaintiffs challenge the admissibility of the Policyholder Notice on the basis that it should be deemed inadmissible parol evidence. Without the Policyholder Notice, the Named Storm Deductible proves ambiguous.

Extrinsic evidence outside of the "four corners" of the contract may used only to "clarify the ambiguity or show the intention of the parties." *Amoco Production Co. V. Fina Oil & Chemical Co.*, 670 So.2d 502 (La. Ct. App. 1st Cir. 1996). However, in *Waldrip v. Connecticut Nat. Life Ins. Co.*, the court pronounced that La. R.S. 22:628 (the "Entire Contract Policy Statute") bars the use of agreements in conflict with, modifying or extending the coverage of any contract of insurance unless its

8

is in writing and physically made a part of the policy (i.e. actually or via specific reference). 566 So. 2d 434, 437 (La. App. 5th Cir. 1990). The object of the Whole Contract Statute La. R.S. 22:624, which is also relevant, is to assure full notification to the insured of all relevant provisions of his insurance contract. The legislature has determined that this object can be attained only by mandating the actual attachment of modifying provisions to the insurance policy. *Id.* In *Waldrip*, the definitional terms of which procedures were considered experimental and therefore excluded by the policy were at issue and barred for use in court because they impacted coverage.

The Louisiana Supreme Court clearly articulated the three alternative modes of compliance with La. R.S. 22:628 in *Lindsey v. Colonial Lloyd's Insurance Co.*, 595 So.2d 606, 609-10 (La. 1992). The Louisiana Supreme Court stated, "1) the first paragraph allows any paper physically attached to the policy to become part of the policy; 2) paragraph one also allows incorporation by reference, that is, a policy of insurance or written evidence of insurance may simply refer to another policy of insurance or written evidence of insurance, incorporating the latter by words alone; and 3) the third paragraph provides that a modifying agreement may be made part of the policy when the agreement 'makes reference to such policy" **and** is mailed or delivered to the policy holder. (Emphasis added).

As renewal policy holders, Plaintiffs received notice and signed renewal policies. In *Crocker v. Roach*, 766 So. 2d 672, 677 (La. App. 2 Cir., 2000), the court relied on La. R.S. 22:635(A), pertaining to renewal policies, and found that an insurer need not "reissue the entire policy each and every time it [is] renewed. It [is] sufficient that the renewal certificates designated the provisions which were added or deleted from coverage." In *Crocker*, the court found that the renewals of the policy "were not wholly new policies but were merely extensions of the original contract. As such, La. R.S. 22:628 required that the renewal policies carry the same coverage with the same exclusions – as the original unless a change was effected in the manner set forth in La. R.S. 22:628." *Id*. at 678.

In applying *Crocker* and *Lindsey* to the case at bar, the renewal policy and the attached Policyholder Notice comply with La. R.S. 22:628. The renewal policy properly refers to the endorsement, and constitutes a modifying agreement referring to the original policy. The physically attached Policyholder Notice is also a part of that renewal. With said Policyholder Notice physically attached to renewal policies sent to Named Plaintiffs, the renewal policy proves unambiguous and supports the denial of partial summary judgment.[2]

---

[2] During oral argument, parties conceded and Louisiana law supports that the Policyholder Notice not being sent to the Insurance Commissioner proves of no consequence to the outcome of

10

Plaintiffs' contentions that they never received the Policyholder Notice, despite Defendant's evidence that the Policyholder Notice had been sent, does not salvage their Motion for Partial Summary Judgment. In *Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyds of London*, 616 So.2d 1250 (La. 04/12/93), the insured prevailed on its argument relating to having never received a copy of the policy in question because the insurer never sent the policy, making the insurer noncompliant with La. R.S. 22:628 and 22:634. However, in *Rapp v. Geico Indemnity Company*, 925 So.2d 626, (La. App. 4 Cir. 2/8/06), when the plaintiff presented an affidavit testifying that he had never received a copy of the policy stating the provisions of the UM coverage, the trial court found that because the insurer provided internal underwriting documents and an affidavit from an underwriter stating that the insurer had mailed a policy with the original purchase and renewal, the grant of summary judgment was warranted. Plaintiffs' contentions of non-receipt of the Policyholder Notice prove of no consequence in light of Louisiana case law.

In light of the admissibility of the Policyholder Notice, this Court rejects Plaintiffs' contentions regarding the application of the deductible. Thus, Plaintiffs' Motion for Partial Summary

---

whether the Policyholder was valid and admissible.

Judgment cannot be granted. Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment is **DENIED**. **IT IS FURTHER ORDERED** that Plaintiffs' Motion to Certify Class (Rec. Doc. No. 20) and Plaintiffs' Motion to Appoint Putative Class Counsel (Rec. Doc. No. 45 & 103) are **DISMISSED AS MOOT.**

New Orleans, Louisiana this 11th day of September, 2008

UNITED STATES DISTRICT JUDGE